**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HARRY LEE WILSON,

      Plaintiff,

v.                                 Case No. 3:17-cv-1045-J-34MCR

A. HINTON, et al.,

      Defendants.

_____

## O R D E R

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 34, Motion to Dismiss), filed March 5, 2018, and Defendants' Motion for Partial Summary Judgment (Doc. 42, Motion for Partial Summary Judgment) filed July 2, 2018 (collectively "Motions").[1] In the Motions, Defendants, Jacksonville Sheriff's Officers A. Hinton, #73395, T.D. Yorton, #64405, T.L. Batrous, #7185, Sergeant Batrous, and Detective Medlock (Defendants), seek dismissal of, or alternatively partial summary judgment on the claims in Plaintiff Harry Lee Wilson's pro se sworn Amended Complaint (Doc. 30, Amended Complaint).[2] Wilson has filed a response to both the

---

[1] Defendants attached the following evidence in support of their Motion for Partial Summary Judgment: Doc. 42-1 (Wilson Deposition and Associated Exhibits); Doc. 42-2 at 1-21 (Wilson injury photos); Doc. 42-2 at 22-24 (Lost Wallet Report); Doc. 42-2 at 25–28 (JSO Internal Investigation Complaint Form); Doc. 42-2 at 29-30 – Doc. 42-2 at 1 (State Court Complaint); Doc. 42-3 at 2–31 (Wilson Medical Records); Doc. 42-4 (Hinton Declaration); Doc. 42-5 (Yorton Declaration); Doc. 42-6 (Batrous Declaration); Doc. 42-7 (Medlock Declaration); Doc. 42-8 (Rogozinski Declaration and Associated Exhibits); Doc. 42-9 (Desire Deposition); Doc. 42-10 (Miu Deposition and Associated Exhibits); Doc. 42-11 (Sampson Deposition and Associated Exhibits); Doc. 42-12 (Wilson Arrest and Booking Report); Doc. 42-13 (Wilson Certified Judgment and Sentence).

[2] See Stallworth v. Tyson, 578 Fed. Appx. 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should [be] given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations."). In citing to Stallworth, the Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive

1

Motion to Dismiss, <u>see</u> Doc. 35 (Response to Motion to Dismiss), filed March 19, 2018, and the Motion for Partial Summary Judgment, Doc. 46 (Response to Motion for Partial Summary Judgment), filed Aug. 16, 2018. Therefore, the Motions are ripe for review.

## I.    Standards of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508, n.1 (2002); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. <u>See</u> <u>Omar ex rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. <u>Jackson v. BellSouth Telecomm.</u>, 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

---

authority." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); <u>see</u> generally FED. R.APP. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also BellSouth Telecomm., 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

In this context, "pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 Fed. Appx. 837, 839 (11th Cir. 2011) (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 706 (11th Cir. 2010)).

With regard to the Motion for Partial Summary Judgment, Rule 56, Federal Rules of Civil Procedure (Rule(s)), instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be

considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[3]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 Fed. Appx. 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## II. Background

Wilson brings this action against several Jacksonville Sheriff's Office (JSO) police officers alleging a variety of claims arising out of his arrest on June 30, 2017, in Jacksonville, FL. Generally, Wilson alleges that in the course of his arrest, the Defendant officers subjected him to excessive force, sexual abuse and harassment, failed to properly administer Miranda[4] warnings, illegally searched his car, and were deliberately indifferent to his serious medical needs. Following are the circumstances giving rise to his claims.[5]

On the evening of June 30, 2017, Defendants observed Wilson driving his vehicle without his lights illuminated. Wilson Arrest and Booking Report at 4. An officer signaled to Wilson that he should pull over, which he eventually did. Id.; Wilson Deposition at 18. Upon stopping his vehicle, Wilson got out of his car and asked the officers why they stopped him, arguing that they lacked probable cause to do so. Wilson Arrest and

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).
[5] In the Motion for Partial Summary Judgment, Defendants state that
> [f]or the purposes of this Motion, the Defendant Officers are accepting as true Plaintiff's version of events; however, the Defendant officers dispute many, if not all, of Plaintiff's allegations and reserve the right to contest those facts in other contexts. Furthermore, Plaintiff's deposition testimony is internally inconsistent as to how the events unfolded on June 30, 2017. As a result, Defendants will present the facts that are most favorable to the Plaintiff, despite Plaintiff contradicting his own testimony in this regard.

Motion for Partial Summary Judgment at 2, n.2.

Booking Report at 4; Wilson Deposition at 13, 30. Wilson also refused to provide the officers with his license or any form of identification. Wilson Arrest and Booking Report at 4. One of the officers drew his gun and directed Wilson to return to his vehicle. Wilson Deposition at 13. Wilson did so and closed the car door. The officer who had drawn his gun then came to the driver's side of the vehicle, opened the door, and pulled Wilson out of the car, while still pointing his weapon at Wilson. Id. The officer then secured his weapon and proceeded to try to place handcuffs on Wilson. Id. at 13, 26. As the officer began this process, Wilson attempted to inform the officer that he was disabled and that putting his hands behind his back would cause him pain, but that he could be handcuffed with his hands in front of him. Id. at 13, 27, 29-30. The officer disregarded Wilson's statements, hit him two or three times in his chest and head, and threw Wilson onto the hood of his car. Id. at 13, 27. In doing so, the two men fell to the ground. Id.

At this time the other officers at the scene also began to hit and beat Wilson. Id. at 13, 29. Officer Yorton hit and kicked Wilson in his stomach and head, while Officer Batrous[6] kicked Wilson's front teeth.[7] Id. at 13, 29, 36. During this process, Wilson continued to struggle against the officers, who in turn, struggled to place him in handcuffs. Id. at 13, 27. Again, Wilson tried to communicate to the officers that putting his arms behind his back would cause him pain. Id. In an effort to subdue Wilson so that the officers could handcuff him, Officer Batrous placed Wilson in a chokehold which caused

---

[6] In his complaint and subsequent filings, Wilson suggests that two of the officers involved in this action both had the name Batrous. In response, Defendants state that "[c]ontrary to Plaintiff's assertions, T.L. Batrous and Sergeant Batrous are the same person." Motion for Partial Summary Judgment at 1, n.1.

[7] In his Amended Complaint, Wilson alleges that Officer Batrous kicked out his front teeth. Amended Complaint at 7. However, in his deposition testimony, Wilson clarified that several months after his arrest, he lost a gold tooth that became loose after his encounter with the police. See Wilson Deposition and Associated Exhibits at 36, 91-92, 244 (October 27, 2017 billing records from dentist).

Wilson to lose consciousness.  Id. at 13, 35.[8]

During his deposition, Wilson testified that he believed that the officers likely thought that he was resisting arrest.  Id. at 30-31.   In their declarations, the officers stated that they did indeed believe that Wilson was resisting arrest, both while he was standing by the side of his car, as well as once he was on the ground.  See Yorton Declaration at 2-3; Batrous Declaration at 2-3; Medlock Declaration at 2.   However, in his deposition, Wilson testified that he was not resisting arrest, but rather, was merely resisting the pain associated with having to place his arms behind his back.  Wilson Deposition at 29, 30.

The record is not entirely clear as to what happened between the time Wilson lost consciousness and when Defendants brought him to the police station.[9]   During his deposition, Wilson testified that he was not sure how long he was unconscious, but believed it may have been somewhere between three and five minutes.   Wilson Deposition at 33.[10]  When he regained consciousness, he was handcuffed, his trousers were at his knees, and he was covered in urine and feces.  Id. at 13, 32, 52, 53-54.  He testified that his whole body was in pain and that his rectum felt uncomfortable.  Id. at 53-54.  Wilson further testified that while he was handcuffed, the officers continued to kick and beat him, then dragged him along the road to place him in their car.  Id. at 13, 32, 57.

---

[8] Wilson also testified that he surmised that one of the reasons the officers subjected him to force was that they wanted to steal his wallet.  Id. at 58-59.  The outside of Wilson's wallet looked like a hundred dollar bill.  Id.  When folded and stored in his back pocket, he suggested that it looked like he had multiple hundred dollar bills in his pocket, and that in arresting and assaulting Wilson, the officers were motivated by their desire to steal what they perceived to be his extensive possession of cash.  Id.  The record indicates that on June 29, 2017, the day before Wilson's encounter with the Defendants, he filed a report with the JSO reporting that his wallet had been stolen.  See Lost Wallet Report.  However, Wilson suggests that the officers fabricated the June 29, 2017 Lost Wallet Report.  Wilson Deposition at 67.
[9] Defendants do not seek summary judgment for any claims related to events which occurred during this time period.  Motion for Partial Summary Judgment at 5, n.5.
[10] However, Wilson also postulates that perhaps he was unconscious for fifteen to thirty minutes.  Wilson Deposition at 33.

Doing so, they hit Wilson's head on the side of the police car door, causing him to again lose consciousness for a brief period of time. Id. at 32. He regained consciousness while Defendants were transporting him to the police station. Id. at 34.

In his Amended Complaint, Wilson also alleges that during his encounter with the officers, Detective Medlock failed to provide him with a Miranda warning upon his arrest, and failed to stop the other officers in their abuse of Wilson. Amended Complaint at 6. Wilson further alleges that Officer Medlock conducted an illegal search of his vehicle after Wilson asked him not to do so. Id. at 8. The police report associated with Wilson's arrest confirms that upon arresting Wilson, Officer Medlock did search Wilson's car and found a crack pipe. Wilson Arrest and Booking Report at 4-5.

At the police station, the officers charged Wilson with resisting an officer without violence, use or possession with intent to use drug paraphernalia, attaching license plate or validation sticker not assigned, license not legible (faded/mutilated) or not carried/exhibited on demand, and no lamps or illuminating devices. Id. at 2-4. During his intake process, Wilson was bleeding from his mouth and head and an officer used a hand towel to wipe the blood from his face. Amended Complaint at 7; Wilson Deposition at 13, 64. Wilson informed police staff that he was injured and needed to see a doctor. Wilson Deposition at 64. However, he was left sitting for two hours with his hands cuffed behind his back. Id. at 13, 64.

Wilson was eventually examined by Nurse Wilda Marie Desire. Desire Deposition at 12. Nurse Desire testified that the purpose of the examination was to screen Wilson upon his entry to jail and to "take [a] medical record of the patient to know what is wrong – [and] if the patient [has] something wrong going on medically, . . . we can take care of

8

that patient." Id. at 10-11.  During her examination of Wilson, Nurse Desire asked him if he had suffered any trauma within the last forty-eight hours and he answered "no."  Id. at 15-16.  Wilson did report that he suffered from serious vision problems, in the form of cataracts, id. at 16, and that he had a Valium prescription for insomnia.  Id. at 18.  He also reported to Nurse Desire that "his hands are contracted and he is unable to make a fist," id. at 21, for which he took medication.

Wilson did not report to Nurse Desire that he had any pain in his shoulders, nor did he complain of wrist pain.  Id. at 22-24.  He did not report any complaints of neck or back pain, id. at 24, or that he had been rendered unconscious in the course of his arrest.  Id. at 24-25.  Similarly, he did not mention that he had any loose teeth.  Id. at 25-26.  Nurse Desire testified that if Wilson had a tooth knocked out or even loosened, he likely would have been bleeding, and she would have sent him to the hospital.  Id. at 26-27.  When Nurse Desire asked Wilson if he had ever been sexually abused, he answered in the negative.  Id. at 28.  Therefore, based on Nurse Desire's examination of Wilson, she did not see any need to send him to the hospital for additional examination or treatment, and cleared Wilson for admission into jail.  Id. at 14, 33.  Nurse Desire affirmed that if she had observed signs that Wilson was in need of immediate medical attention, she would have sent him to the hospital.  Id. at 32, 33.

The next day, July 1, 2017, Wilson entered a plea of nolo contendre to the charge of use or possession with intent to use drug paraphernalia, for which he received a sentence of two days of jail time (representing the time he had already served) and six months of probation.  Wilson Certified Judgment and Sentence at 2.  He was not prosecuted for the other charges.

On the evening of July 2, 2017, Wilson went to a Jacksonville area hospital emergency room. Miu Deposition at 8. He was initially examined by Dr. Matthew Kwan Ho Miu. Wilson reported to the doctor that he had a past medical history of chronic back pain. Id. He also reported that he

> was arrested by the police and he was slammed on the floor because they thought he was being noncompliant. He [said they] hit [his] head . . . shoulders and arms, and [he] lost consciousness. He [said] that when he woke up he was bruising [sic] and [had] abrasions as well as a headache. He also [said] that when he woke up he [had] stool all over himself and thinks that he was sexually assaulted by the police.

Id. at 12. According to Dr. Miu, Wilson did not present with nausea, vomiting, abdominal pain, rectal pain, or anal discharge which might otherwise be associated with sexual assault injuries. Id. at 14-15. During his examination of Wilson, Dr. Miu did not see any physical evidence that Wilson had been choked. Id. at 24. Wilson did present mild tenderness in his left shoulder, and mild swelling in his left forearm. Id. at 25. Otherwise, the range of motion for his shoulders and his wrist was normal. Id. In examining Wilson, Dr. Miu also observed that Wilson had superficial abrasions or scrapes on his left shoulder and forehead. Id. at 28. Likewise, Dr. Miu saw mild swelling on Wilson's forehead. Id. However, after performing a CT scan on Wilson's head, he saw no evidence that Wilson suffered any bleeding in his brain or other brain trauma. Id. at 30–31. An X-ray of Wilson's left forearm and shoulders showed he suffered from arthritis, but otherwise, there was no indication of soft tissue swelling in his arm or shoulders. Id. at 32-34. Wilson did not complain to Dr. Miu of back pain, knee pain, or teeth pain as a result of his arrest by the officers. Id. at 39-40. In the hospital report, Dr. Miu listed Wilson's status as "good," which represents the best categorization of the condition of a patient. Id. at 36.

In light of Wilson's report that he had been sexually assaulted, a sexual assault

nurse examiner, Nurse Andriece Sampson, also examined him. Sampson Deposition at 8-9. Wilson reported to Nurse Sampson that he had pain in his arm, neck, hands, shoulder, and head. Id. at 11. In examining Wilson, Nurse Sampson noted that he had abrasions on his left temple, id. at 15, his left shoulder and forearm, id. at 16, and bruises and abrasions on his left knee. Id. However, Nurse Sampson did not observe any swollen areas on Wilson. Id. at 18. Likewise, she did not observe any injuries to his anus or rectum. Id. at 15.

In his deposition, Wilson reported that he suffered from a broad range of injuries as a result of his arrest by the officers, some of which persisted several months after the incident. Immediately after his encounter with the police, Wilson testified that he suffered from a swollen neck, sore and swollen wrists, a knot on his head, a cut across his eye, and bleeding from his head and shoulder. Wilson Deposition at 36-37, 76-78. He further stated that his ongoing injuries include pain in his shoulder, knee pain, muscle spasms and a limited range of motion in his neck, a scar on his shoulder, and limited strength and dexterity in his hands. Id.

On July 26, 2017, Wilson submitted an internal investigation complaint of unnecessary force to JSO regarding his June 30, 2017 encounter with the officers. See JSO Internal Investigation Complaint; Wilson Deposition at 68. In his internal investigation complaint, Wilson alleged that the officers beat him, threw him to the ground, and put him in a chokehold causing him to lose consciousness. JSO Internal Investigation Complaint at 25, 27. He further asserted that during the altercation, he informed the officers that he was unable to be handcuffed with his hands behind his back because he was disabled. Id. at 26-27. He stated that once at the jail, he had to sit for two hours with

his hands still restrained behind his back which caused him much pain.  Id. at 28; see also Doc. 30-1 at 6-7 (JSO correspondence acknowledging Wilson's complaint against Defendants).  Wilson did not include anything in this report regarding any injury to his teeth, or that he suffered a sexual assault.  Wilson Deposition at 71-72.

Wilson then initiated the instant action against Defendants in state court, and Defendants removed it to this Court.  See Doc. 2 (Complaint, filed Sept. 5, 2017); Doc. 1 (Notice of Removal, filed Sept. 5, 2017).  Defendants immediately filed a motion to dismiss the action, see Doc. 3, which the Court denied without prejudice.  See Doc. 29 (Order Denying Motion to Dismiss, filed Feb. 12, 2018).  Doing so, the Court also struck Wilson's Complaint, and gave him leave to file an Amended Complaint, which he did.  Id.  Wilson's Amended Complaint serves as the operative complaint for this action.  In his Amended Complaint, Wilson asserts eleven different counts against the officers, which can be grouped into five general categories: excessive force, sexual assault/harassment, deliberate indifference to serious medical needs, failure to provide Miranda warnings, and illegal search.[11]  Defendants then filed their Motion to Dismiss Plaintiff's Amended Complaint, to which Wilson filed a response.  Subsequently, Defendants filed their Motion for Partial Summary Judgment, to which Wilson also filed a timely response.

---

[11] Many of the individual counts in Wilson's Amended Complaint overlap or repeat one another.  Liberally construing his Amended Complaint, Tannenbaum, 148 F.3d at 1263, Counts I, II, III, IV, VI, VIII, IX and X relate, in part, to Wilson's claims of excessive force against Defendants.  See Amended Complaint at 5, 6, 7, 8.  Counts III, VII, VIII, and X refer, in part, to his claims of sexual assault.  Id. at 5, 7, 8.  In Counts IV and V, Wilson raises his Miranda warning claim.  Id. at 6.  Count IX of Wilson's Amended Complaint suggests his claim of deliberate indifference, id. at 7, and Count XI addresses his claim of illegal search.  Id. at 8.

The language in Wilson's filings before the Court suggest that he is seeking to hold the Defendants accountable under both state and federal law.  Amended Complaint at 3, 9-10; see also Response to Motion to Dismiss at 2; Response to Partial Motion for Summary Judgment at 3.  However, Wilson does not specifically reference any federal statutes or particular state laws under which his claims might arise.

### III.    Arguments of the Parties

In their Motion to Dismiss, Defendants first assert that Wilson's Amended Complaint should be dismissed because it constitutes an impermissible shotgun pleading. Motion to Dismiss at 3-5.  Next, Defendants argue that Wilson's Amended Complaint fails to state a claim for which relief may be granted under federal law.  In particular, Defendants focus on Wilson's claims of excessive force, failure to provide <u>Miranda</u> warnings, and deliberate indifference to serious medical needs.  <u>Id.</u> at 5-8.  They assert that "Plaintiff has failed to allege any of the elements necessary to establish an excessive force claim under the Fourth Amendment, a deliberate indifference claim under the Fourteenth Amendment, or any other Constitutional violation."  <u>Id.</u> at 8.[12]  As to Wilson's deliberate indifference claim and his <u>Miranda</u> violation claim, Defendants also assert that they are entitled to qualified immunity.  <u>Id.</u> at 9–12.  Finally, in addition to contending that Wilson fails to state any claims under state law, <u>id.</u> at 9, Defendants argue that to the extent Wilson's Amended Complaint can be construed as alleging state law tort claims, they are immune from suit pursuant to Florida Statute section 768.28(9)(a).  <u>Id.</u> at 12.

In his Response to the Motion to Dismiss, Wilson largely reiterates the factual allegations regarding his excessive force, sexual assault/harassment, deliberate indifference, and <u>Miranda</u> claims.  Additionally, Wilson alleges new facts stating that the Defendants also stole his wallet during the course his arrest.  Response to Motion to Dismiss at 7.  However, he does not respond directly to any of the legal arguments raised by Defendants, nor do the cases and statutes he cites in his Response to the Motion to

---

[12] The Defendants do not seek dismissal of Wilson's claims of sexual assault, sexual harassment, <u>see</u> Amended Complaint at 5, 7, 8 (Counts III, VII, VIII, and X), and illegal search of his vehicle, <u>id.</u> at 8 (Count XI), for failure to state a claim for which relief can be granted.

Dismiss appear to be responsive to those arguments.  Id. at 5.

Defendants also seek entry of partial summary judgment on Wilson's claims of excessive force, deliberate indifference, and violation of <u>Miranda</u>.  In particular, Defendants seek summary judgment as to Wilson's claims of excessive force "prior to Plaintiff being allegedly rendered unconscious during his arrest."  Motion for Partial Summary Judgment at 1.  In this regard, Defendants assert that they are entitled to qualified immunity on this aspect of Wilson's excessive force claim.  They also contend they are protected by qualified immunity in regard to Wilson's deliberate indifference claim.  Id. at 10-23.  With regard to the <u>Miranda</u> claim, Defendants argue that there exists no basis for such a claim.  Id. at 23.  Finally, based on assertions Wilson made during his deposition – that Defendants subjected him to a false arrest – Defendants argue that to the extent Wilson's Amended Complaint can be construed as raising such a claim, it "fails as a matter of law."  Id.  Notably, with regard to Wilson's claims that the officers used excessive force against him <u>after</u> he lost consciousness, as well as subjected him to sexual assault and harassment, Defendants assert that "there are disputed facts concerning the events subsequent to Plaintiff losing consciousness which prevent summary judgment on those claims."  Id. at 5 n.5.  As such, Defendants only seek summary judgment for the portion of Wilson's excessive force claim which preceded him losing consciousness, his claims of deliberate indifference, his <u>Miranda</u> claim, and any claim of false arrest.[13]

In his Response to the Partial Motion for Summary Judgment, Wilson again does not address the legal arguments raised by Defendants.  Instead, he mainly discusses

---

[13] As in their Motion to Dismiss, nowhere in the Motion for Partial Summary Judgment do Defendants address Wilson's allegation that they engaged in an illegal search of his vehicle.

matters of a potential settlement, and evidentiary issues.  Response to Partial Motion for Summary Judgment at 3 - 4.  However, he does reiterate many of his claims and asserts that the Defendants stole his wallet.  Id. at 6.  Additionally, and perhaps in response to Defendants' suggestion that he potentially raised a false arrest claim, Wilson asserts that the Defendants illegally stopped his vehicle.  Id. at 6, 7.

Having summarized the parties' arguments, the Court now turns to the merits of the Motions.  "Because the arguments raised in these motions overlap in large part, the Court will focus primarily on the motion[] for summary judgment, and only consider any additional arguments raised in the motion[] to dismiss where necessary."  McGough v. Marion County, No. 5:06-cv-364-Oc-10GRJ, 2008 WL 2073907, at *1 (M.D. Fla. May 14, 2008).

## IV.    Discussion

### a.  Sufficiency of Wilson's Amended Complaint

In the Motion to Dismiss, Defendants argue that Wilson's Amended Complaint does not comply with pleading standards laid out in the Federal Rules of Civil Procedure, thereby warranting dismissal.  Motion to Dismiss at 3-5.  In particular, Defendants contend that Wilson's Amended Complaint does not provide a short and plain statement of the claims against them as required by Rule 8(a)(2), and therefore constitutes a shotgun pleading.  Id. at 3-4; see also Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1320-1323 (11th Cir. 2015) (discussing shotgun pleadings).    Additionally, Defendants assert that Wilson's Amended Complaint lumps the multiple defendants together, making it difficult to "ascertain exactly what the plaintiff is claiming."  Motion to Dismiss at 4; West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 Fed.

Appx. 81, 86 (11th Cir. 2008) (noting that in a case with multiple defendants, plaintiff should avoid "lumping" multiple defendants together).

In challenging Wilson's Amended Complaint pursuant to Rule 8(a)(2), Defendants assert that Wilson's Amended Complaint fails to give them "adequate notice of the federal or state law claim[s] against them." Motion to Dismiss at 3. Defendants' argument in this regard is somewhat undermined as their Motions reflect that they managed to sufficiently decipher the Amended Complaint to respond with arguments for why Wilson has failed to state claims upon which relief can be granted, and that the Defendants otherwise should be entitled to judgment as a matter of law. See Motion to Dismiss at 5-12; Motion for Partial Summary Judgment at 10-23.

The Court is also unpersuaded by Defendants' argument that Wilson's Amended Complaint is inappropriate because he lumped multiple defendants together, making it difficult for the Defendants and Court to determine "exactly what plaintiff is claiming." Motion to Dismiss at 4. In his Amended Complaint, Wilson identifies with particularity certain individual defendants as committing the specific wrongs against him. See Amended Complaint at 5 (identifying defendant Hinton in Count I); id. (identifying defendant Yorton in Count II); id. (identifying defendant Batrous in Count III); id. at 6 (identifying defendant Medlock in Count IV); id. at 7 (identifying defendant Batrous in Count IX); id. at 8 (identifying defendant Medlock in Count XI). Wilson does generally assert that the "defendants in this case all had a part [in the] incidents" associated with the wrongs committed against him. Amended Complaint at 5. However, liberally construing Wilson's Amended Complaint, as the Court must, Tannenbaum, 148 F.3d at 1263, it cannot be said that it is "virtually impossible" for the individual Defendants to

determine which charges Wilson is bringing against each of them.  See Weiland, 792 F.3d at 1325.

Without question, Wilson's Amended Complaint is far from a model of clarity. Indeed, it skirts closely along the boundary of impermissible categories of shotgun pleadings identified by the Eleventh Circuit.  See id. at 1321-1323 (describing categories of shotgun pleadings).  However, given the procedural posture of this case and the fact that Defendants have been able to identify and respond to Wilson's claims, the sanction of dismissal is not warranted.  Thus the Court will turn to Defendants' substantive arguments for dismissal or partial summary judgment.  Doing so, the Court will first address Wilson's federal claims and then turn to Defendants' challenges to his state law claims.

### b.  Federal Claims

#### i.  Excessive Force Claim Up to the Point at Which Wilson Lost Consciousness

In Counts I, II, III, IV, VI, VIII, IX, and X, Wilson asserts federal excessive force claims based on the force the officers used to effectuate his arrest.[14]  Defendants seek summary judgment as to these claims, asserting that they are entitled to qualified immunity for any excessive force claim Wilson has asserted against them based on events up to the point Wilson lost consciousness.  Motion for Partial Summary Judgment at 1-2.

The doctrine of "[q]ualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly

---

[14] In all of these counts Wilson asserts facts which in some manner allege the Defendants used force against him in the course of the arrest and the injuries he suffered as a result.

established statutory or constitutional rights of which a reasonable person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As a result, this defense protects from suit "'all but the plainly incompetent or those who knowingly violate the law.'"[15] Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Indeed, as "'government officials are not required to err on the side of caution,' qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful."  Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002) (quoting Marsh v. Butler Cnty., 268 F.3d 1014, 1031 n.8 (11th Cir. 2001)).

In order to be entitled to qualified immunity, the defendant must first establish that his conduct was within the scope of his discretionary authority.  See Webster v. Beary, 228 Fed. Appx. 844, 848 (11th Cir. 2007) (per curiam); Lee, 284 F.3d at 1194.  Here, neither party contends that the Defendants were acting outside the scope of their discretionary authority when they arrested Wilson.[16]  Lee, 284 F.3d at 1194 (finding that "there can be do doubt that the [officer] was acting in his discretionary capacity when he arrested [the plaintiff]" even though the plaintiff asserted that the officer used excessive force in effectuating the arrest).  Therefore, the burden shifts to Wilson "to show that

---

[15] In determining whether a defendant is entitled to qualified immunity, the court views the facts and all reasonable inferences in the light most favorable to the plaintiff to the extent supported by the record, and then considers "the legal issue of whether the plaintiff's 'facts,' if proven, show that the defendant violated clearly established law."  Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000); Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).  As such, the facts recited in this Order are discussed in the light most favorable to Wilson and may differ from the facts ultimately proved at trial.  See Lee, 284 F.3d at 1190.

[16] "'A government official acts within [her] discretionary authority if the actions were (1) undertaken pursuant to the performance of [her] duties and (2) within the scope of [her] authority.'"  Jones v. City of Atlanta, 192 Fed. Appx. 894, 897 (11th Cir. 2006) (per curiam) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)).

qualified immunity is not appropriate." Lee, 284 F.3d at 1194. To do so, Wilson must establish two elements: (a) that the defendant violated a constitutional right, and (b) the right violated was clearly established. Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court may consider these elements in whichever order it chooses, and qualified immunity will protect the defendant if the plaintiff fails to establish either element. Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009). Wilson is unable to meet his burden.

Addressing the first prong, the Court must determine whether, in the course of arresting Wilson, Defendants subjected him to an unlawful use of force. In particular, the Court must evaluate whether the officers used excessive force when they pulled him out of his car, hit him in the face and chest, threw him on the hood of his car and then onto the ground, punched and kicked him while he was on the ground, and then handcuffed Wilson despite his protestations that he was disabled and that handcuffing him in such a manner would cause him pain. In doing so, the Court heeds the Supreme Court's cautions that:

> [d]etermining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force,

the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.

Graham v. Connor, 490 U.S. 386, 396–97 (1989) (internal citations and quotations omitted). See also Croom v. Balkwill, 645 F.3d 1240, 1251-52 (11th Cir. 2011); Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004); Durruthy v. Pastor, 351 F.3d 1080, 1093-94 (11th Cir. 2003).

As an initial matter, the Court notes that as Defendants were arresting Wilson, the use of some force was warranted. See Brown v. City of Huntsville, 608 F.3d 738, 739-40 (11th Cir. 2010) ("[T]he law permits some use of force in any arrest."). "A law enforcement officer's right to arrest necessarily carries with it the ability to use some force in making the arrest." Id. at 740. Even when a suspect is not actively resisting arrest or attempting to flee, the police may use a "reasonable amount of force to subdue and secure" the suspect." Lee, 284 F.3d at 1198. Indeed, even for "minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls." Brown, 608 F.3d at 740. Moreover, the Eleventh Circuit has found that an officer's use of de minimis force to effectuate a lawful arrest does not constitute excessive force. Taylor v. Taylor, 649 Fed. Appx. 737, 746-47 (11th Cir. 2016) (threshold level of force necessary to make custodial arrest insufficient to support a claim for excessive force); Myers v. Bowman, 713 F.3d 1319, 1327 (11th Cir. 2013) (application of de minimis force, without more, does not support claim of excessive force); Woodruff v. City of Trussville, 434 Fed. Appx. 852, 855 (11th Cir. 2011) (de minimis force will not defeat an officer's claim of qualified immunity);

Croom, 645 F.3d at 1252 (even where use of force may have been unnecessary, if de minimis, force is not unlawful); Nolin, 207 F.3d at 1257 ("the application of de minimis force, without more, will not support a claim for excessive force"); Hines v. Jefferson, No. 1:17-CV-3263-TWT, 2018 WL 4255860, at *4 (N.D. Ga. Sept. 6, 2018) ("de minimis force . . . as a matter of law, does not constitute excessive force); Ainsworth v. City of Tampa, No. 8:10-cv-293-T-23TGW, 2010 WL 2220247, at *5 (M.D. Fla. June 2, 2010) ("the application of de minimis force, without more, will not support a claim of excessive force").

Moreover, absent some reason to find the officer knew a person was unusually vulnerable, where the officer uses de minimis force, there is no constitutional violation, even though the force may cause significant harm to the arrested individual. Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002) (Rodriguez I). For example, in Taylor, in the course of arresting the plaintiff, an officer "grabbed [her], slammed her into the side of [a] patrol car, and handcuffed her." Taylor, 649 Fed. Appx. at 741. The plaintiff "suffered a spiral fracture in her right hand, multiple contusions to her right hand, forearm, and right upper eyelid, and a chest wall contusion." Id. Nonetheless, the court concluded that the officer's use of force was not excessive. Id. at 746. Similarly, in Ainsworth, the plaintiff persistently refused to comply with the arresting officer's directions to exit his vehicle. Ainsworth, 2010 WL 2220247 at *6. In response to the plaintiff's lack of compliance, the arresting officer reached into the plaintiff's vehicle, grabbed him, and "yanked him violently from the vehicle before slamming [his] body into the ground." Id. at *1. The plaintiff suffered "serious permanent injuries . . . including . . . a severely herniated disc . . . causing cervical radiculoapthy requiring two surgical discectomy surgeries and injuries to the left shoulder including a torn labrum and rotator cuff requiring surgical

repair." Id. at *2.  Despite the plaintiff's injuries, the court determined that the arresting officer's actions did not extend beyond de minimis force.  Additionally, in Hernandez v. City of Hoover, 212 Fed. Appx. 774, 774-75 (11th Cir. 2006), an officer's use of force was found to be de minimis when the officer kicked the plaintiff and struck his tibial nerve causing a fractured ankle and torn ligament, where the plaintiff, after he was handcuffed, refused to comply with the officer's demands to sit down.  Id.  See also Woodruff, 434 Fed. Appx. at 855 (de minimis force when officer punched plaintiff in face, forcefully removed him from car, and slammed him on the ground); Durruthy, 351 F.3d at 1094 (de minimis force when officer forced plaintiff to ground to place plaintiff in handcuffs); Nolin, 207 F.3d at 1255, 1257 (de minimis force when officer grabbed plaintiff "from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him"); Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (force not unreasonable where officer slammed plaintiff against a wall, "kicked his legs apart, required him to raise his arms above his head," and caused plaintiff to "experience[] pain from having to lift his arms since he had previously suffered a stroke, and that he experienced pain in his arthritic knee from having his legs kicked apart.").

Important to the determination of whether any force used by an officer was excessive, is the question of whether the arrestee complied with the officer's commands, or whether the arrestee resisted the officer's attempts to effectuate the arrest.  See Draper, 369 F.3d at 1278 (officer's use of taser against plaintiff reasonable where plaintiff was "hostile, belligerent, and uncooperative" with officer in the course of the arrest);

Hines, 2018 WL 4255860 at *3 (officer's use of chokehold was reasonable where plaintiff admitted to resisting and struggling against officer); Crutcher v. Athens Police Dep't, NO. CV-10-S-1176-NE, 2014 WL 5521944, at *6 (N.D. Ala. Oct. 31, 2014) (officer's use of chokehold that resulted in plaintiff losing consciousness not unreasonable where plaintiff actively resisted arrest). With this background in place, and construing the facts and making all reasonable inferences in Wilson's favor, Haves, 52 F.3d at 921, Wilson cannot show that the officers' use of force against him, up until the point he lost consciousness, was objectively unreasonable.

The facts demonstrate that from the outset of his encounter with the officers, Wilson challenged their authority to arrest him,[17] and physically resisted their efforts to handcuff him. In his deposition testimony, Wilson stated that upon being stopped by the police, "I got out of my vehicle and started towards him to see what was the problem

---

[17] Scattered throughout Wilson's deposition, as well as detailed in Wilson's Arrest and Booking Report, is evidence that Wilson challenged Defendants' lawful ability to pull over his vehicle and arrest him. See Wilson Arrest and Booking Report at 4; Wilson Deposition at 13, 30. From this, Defendants suggest that perhaps Wilson has raised a claim of false arrest based on a lack of probable cause, and if so, they seek summary judgment on such a claim. Motion for Partial Summary Judgment at 23-24. While it does appear that at different times during his encounter with Defendants, and in the course of this litigation, Wilson challenged Defendants' authority to stop his vehicle, even the most liberal reading of his pro se Amended Complaint cannot support a conclusion that Wilson has raised a claim of false arrest. Nothing in the Amended Complaint suggests, in any manner, that Wilson asserted that Defendants lacked probable cause to stop his vehicle or arrest him. Indeed, Wilson only referenced a claim of false arrest after Defendants suggested he may have alleged such a claim. See Motion for Partial Summary Judgment at 23-24; Response to Motion for Partial Summary Judgment at 6, 7, 8.

While the Court must liberally construe Wilson's pro se Amended Complaint, Tannenbaum, 148 F.3d at 1263, the Court does not have the license to rewrite his pleadings. GJR Invs., Inc., 132 F.3d at 1369. Moreover, to the extent Wilson is attempting to further amend his Amended Complaint through subsequent briefing, he cannot do so. See e.g., Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that the plaintiff could not raise a new claim in response to motion for summary judgment that was not pled in the complaint); O'Brien v. NCL (Bahamas) Ltd., 288 F. Supp. 3d 1302, 1306 n.3 (S.D. Fla. 2017) (court declined to recognize claim alleged in complaint); Pycsa Panama, S.A. v. Tensar Earth Techs., Inc., 625 F.Supp.2d 1198, 1253-54 (S.D. Fla. 2008) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion for summary judgment.") (quoting Southwick Clothing LLC v. GFT (USA) Corp., No. 99-10452, 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004)). Accordingly, the Court will not devote any further discussion to a purported false arrest claim.

because I didn't have a probable cause of being stopped." Wilson Deposition at 13, 30. Similarly, in the Arrest and Booking Report, the officers reported that upon stopping Wilson's car, "the suspect started to exit the vehicle and became verbally abusive. As we were attempting to give him verbal directions to stay in the car he yelled and said we had no reason to stop him." Wilson Arrest and Booking Report at 4. Wilson does not dispute these reports. Moreover, as the officers were attempting to handcuff Wilson, Wilson admitted that he resisted their efforts because of the pain he suffered in placing his hands behind his back. Wilson Deposition at 13, 29-30, 30-31. Notably, in admitting that he resisted the officers because of the pain he felt, Wilson acknowledged that it could have looked to the officers like he was resisting arrest, rather than attempting to prevent additional pain. Id. at 30-31. And in fact, the officers have declared that they did interpret Wilson's actions as resisting arrest. For example, Detective Medlock declared that upon engaging with Wilson, Wilson "instantly became resistant to my requests and would not follow directions. When I began to handcuff Mr. Wilson, he began to physically resist me and tensed his body and arms in a way that would not allow me to handcuff his hands behind his back." Medlock Declaration at 2. Likewise, other officers at the scene declared that they "observed Mr. Wilson resist Detective Medlock's requests and commands." Yorton Declaration at 2; Batrous Declaration at 2. Additionally, Wilson pulled his arms and hands away from the officers as they attempted to handcuff him. Yorton Declaration at 2; Batrous Declaration at 2. Finally, once the officers had Wilson on the ground, he "continued to physically resist arrest by consistently pulling [his] hands and arms from" their grasp. Yorton Declaration at 3; Batrous Declaration at 3. It was only after the officers

placed Wilson in a chokehold and he lost consciousness that they were able to handcuff him.  Wilson Deposition at 13, 35.

Wilson's case is similar to Woodruff, 434 Fed. Appx. at 855 (force de minimis when officer punched plaintiff in face, forcefully removed him from car, and slammed him on the ground), Nolin, 207 F.3d at 1255, 1257 (force de minimis when officer grabbed plaintiff "from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him"), and Jones 121 F.3d at 1460 (force not unreasonable where officer slammed plaintiff against a wall, "kicked his legs apart, required him to raise his arms above his head," and caused plaintiff to "experience[] pain from having to lift his arms since he had previously suffered a stroke, and that he experienced pain in his arthritic knee from having his legs kicked apart.").  Indeed, like the plaintiffs in Woodruff, Nolin, and Jones, Wilson alleges he was pulled from his car, hit in the face and chest, thrown against his car and then onto the ground, punched and kicked while he was on the ground, and then placed in a chokehold until he lost consciousness.  Notably, the facts here do not even implicate those cases in which an officer's use of force, while nonetheless causing significant injury to a plaintiff, was still deemed by a court to be constitutionally reasonable.[18]  See e.g., Taylor, 649 Fed. Appx. at 746; Ainsworth, 2010 WL 2220247 at *2, 6; Hernandez, 212 Fed. Appx. at 774.[19]

---

[18] Although Wilson asserts that he suffered serious and ongoing injuries as a result of his encounter with Defendants, Wilson Deposition at 36-37, 77-78, the undisputed medical evidence which includes testimony of the doctors and medical reports associated with Wilson's arrest, establish that his injuries were superficial.  See Miu Deposition at 25, 27-28; Sampson Deposition at 15, 16.

[19] Wilson's argument that he attempted to inform and convince the officers that placing him in handcuffs behind his back would cause him pain does not salvage his claim.  The Eleventh Circuit has noted that
a police officer need not credit everything a suspect tells him.  See Marx v. Gumbinner, 905 F.2d 1503, 1507 n. 6 (11th Cir.1990). This idea is especially true when the officer is in the process of handcuffing a suspect. As another federal court recently noted, statements

Importantly, viewing the facts in the light most favorable to Wilson, it is undisputed that until he was placed in the chokehold and lost consciousness, Wilson appeared to Defendants to be actively resisting arrest. On these facts a reasonable officer could certainly have concluded that the force used here was necessary to effectuate the arrest. Penley v. Eslinger, 605 F.3d 843, 852-53 (11th Cir. 2010) (finding use of deadly force objectively reasonable where reasonable police officers possessing the same information as the defendant officer would have thought such force was necessary). Accordingly, viewing the facts and all reasonable inferences in Wilson's favor, Hayes, 52 F.3d at 921, Defendants' use of force was not excessive, and therefore did not represent a constitutional violation.

Moreover, even if the Court found otherwise, Wilson fails to point to facts supporting a conclusion that Defendants violated a clearly established constitutional right. See Kingsland, 382 F.3d at 1232. In this context, the Supreme Court has explained:

> [f]or a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been

---

by suspects claiming (at the time of their arrest) to have pre-existing injuries are, "no doubt, uttered by many suspects who, if given the choice, would prefer not to be handcuffed at all and, if they must be restrained in that manner, would prefer that the handcuffs be in front."
Caron v. Hester, No. CIV. 00–394–M, 2001 WL 1568761, at *8 (D.N.H. Nov.13, 2001).
Rodriguez v. Farrell, 294 F.3d 1276, 1278 (11th Cir. 2002) (Rodriguez II). While Wilson may have suffered pain from putting his hands behind his back based on some pre-existing injury, it was only as the officers began to attempt to handcuff Wilson that he asserted he suffered from a disability preventing him from being handcuffed from behind. Wilson Deposition at 13, 27, 29-30. Eleventh Circuit precedent suggests that in such an instance, where an officer continues to handcuff a suspect, the force is not excessive. See e.g., Rodriguez II, 294 F.3d at 1278, n.3 ("Perhaps, if Plaintiff, before the physical part of the arrest began, had also told [the officer] that Plaintiff's arm was injured, we would be more inclined to conclude that the Constitution required [the officer] to credit that statement."); Rodriguez I, 280 F.3d at 1341 ("What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time."); Schultz v. Hall, 365 F. Supp. 2d 1218, 1229-30 (N.D. Fla. 2005) (no excessive force where officers could not have reasonably known at time of handcuffing suspect that a previous injury would render suspect unable to safely place arms behind her back, or where it was entirely reasonable for officers not to credit suspect's claims about her injury).

held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citation omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  For purposes of this analysis the critical question is whether the state of the law gave the government actor "fair warning" that his alleged treatment of the plaintiff was unconstitutional.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting Hope, 536 U.S. at 741); see also Marsh, 268 F.3d at 1031 ("[F]air and clear notice to government officials is the cornerstone of qualified immunity.").  The Eleventh Circuit recognizes three sources of law that would provide a government official adequate notice of statutory or constitutional rights: "specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction."  Harper v. Lawrence County, Ala., 584 F.3d 1030, 1037 (11th Cir. 2009) (quoting Goebert v. Lee County, 510 F.3d 1312, 1330 (11th Cir. 2007)).  Thus, where the words of the federal statute or federal constitutional provision are specific enough "to establish clearly the law applicable to particular conduct and circumstances," then the plaintiff can overcome the qualified immunity privilege, even in the absence of case law.  Vinyard, 311 F.3d at 1350.  In this type of "obvious clarity" case "the words of the federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful."  Id.

Alternatively, where the conduct alleged is not so egregious as to violate a statutory or constitutional right on its face, courts look to case law to determine whether the law is "clearly established."  Id. at 1351.  If the case law contains "some broad statements of principle" which are "not tied to particularized facts," then it may be sufficient

to clearly establish the law applicable in the future to different facts.  Id.  However, to provide officials with sufficient warning, the case law must establish a principle with such "obvious clarity" that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted."  Id.  Last, in the absence of broad statements of principle, precedent can clearly establish the applicable law where "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar," to the particularized facts of prior case law.  Id. at 1352.  Such precedent must be found in decisions from the Supreme Court, the controlling circuit court of appeals, or the pertinent state supreme court.  Id. at 1351.  Although such a case "on all fours" with materially identical facts is not required to establish "fair warning" to government officials, see Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004) (discussing the impact of Hope on Eleventh Circuit precedent), "existing precedent must have placed the statutory or constitutional question beyond debate," see Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) (quoting Malley, 475 U.S. at 341)).

Here, Wilson has not demonstrated to the Court that Defendants would have had fair warning that their use of force on a non-compliant Wilson was unlawful.  He has not presented the Court with any case materially similar to the facts of the instant controversy in which the conduct was found to violate constitutional norms.  To the contrary, as discussed, the facts of Wilson's encounter are similar to the facts present in decisions from the Eleventh Circuit where the defendants' actions were found not to violate the Constitution.  See Woodruff, 434 Fed. Appx. at 855; Nolin, 207 F.3d at 1255, 1257; Jones 121 F.3d at 1460.  Indeed, given the similarity of Wilson's case to Woodruff, Nolin, and

Jones, Wilson "cannot show that a broader, clearly established principle applies with 'obvious clarity' to the particular factual situation faced by [Defendants], or that the conduct at issue so obviously violated the Constitution that existing case law is unnecessary." Taylor, 649 Fed. Appx. at 747.

Accordingly, to the extent Defendants seek summary judgment on Wilson's claims that they used excessive force in arresting him, up to the point that Wilson lost consciousness, Defendants are entitled to qualified immunity. Thus, summary judgment is due to be entered in favor of Defendants on Wilson's claim of excessive force, as embodied in Counts I, II, VI and IX. Likewise, partial summary judgment is due to be entered in favor of Defendants on Wilson's excessive force claims as identified in Counts III, IV, VIII and X, up to the point at which he lost consciousness.

### ii. Deliberate Indifference Claim

Defendants also assert that they are entitled to qualified immunity on Wilson's claim of deliberate indifference to his serious medical needs.[20] Motion for Partial Summary Judgment at 21-23. Because it is undisputed that Defendants were acting in the scope of their discretionary authority when they arrested Wilson and took him to the police station for booking, the Court considers whether Wilson raises a genuine issue of fact on the question of whether Defendants violated a constitutional right and whether that right was clearly established. Kingsland, 382 F.3d at 1232.

Wilson contends that after arresting and handcuffing him, Defendants were deliberately indifferent to his serious medical needs. In particular, he asserts that Defendants left him sitting at the police station for two hours with blood on his face; his

---

[20] This claim is found in Count IX of Wilson's Amended Complaint.

hands cuffed behind his back, despite his assertions that he was disabled; in pain; and without regard to his need to see a doctor.  Amended Complaint at 7; Wilson Deposition at 64; JSO Internal Investigation Complaint at 29.

The Eleventh Circuit has explained that

> [d]eliberate indifference to a detainee's serious medical needs requires 1) an objectively serious medical need and 2) a defendant who acted with deliberate indifference to that need.  A "serious medical need" is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment.  For liability, the defendant must 1) have subjective knowledge of a risk of serious harm, 2) disregard that risk, and 3) display conduct beyond gross negligence.
>
> Deliberate indifference may result not only from failure to provide medical care at all, but also from excessive delay:  Even where medical care is ultimately provided, a [government actor] may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs.

Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1317 (11th Cir. 2010) (quotations and citations omitted).  Construing the facts and making all reasonable inferences in Wilson's favor, Haves, 52 F.3d at 921, Wilson fails to present evidence supporting a possible conclusion that he suffered from a serious medical need, or that the Defendants were deliberately indifferent to any such need.  As such, no genuine issue for trial is present on his claim of deliberate indifference.

First, neither Wilson's allegations, nor the facts before the Court on the Defendants' Motion for Partial Summary Judgment, support an inference that Wilson suffered from a serious medical need.  In his Amended Complaint, Wilson alleges that while at the police station, he "had blood running from [his] mouth and head [and that] the officer at the police station clean[ed] the blood from [his] face with [a] hand tower [sic]."  Amended Complaint at 7.  Wilson attached to his Amended Complaint his submission to the JSO Internal Complaint Division regarding his encounter with the officers.

Handwritten Internal Complaint to JSO at 8-10 (Doc. 30-1); <u>see also</u> JSO Internal Investigation Complaint Form. There he related that when the Defendants took him to the police station he sat "down outside on a steel bench for about two hours with his hand cuff[ed] behine [sic] [his] back and legs cuff[ed] as well [and] having much pain in hands and head and back & neck." Handwritten Internal Complaint to JSO at 10. Likewise, in his deposition, Wilson reported that upon arriving at the police station, he had a cut across his eye and a knot on his head, and that he was bleeding from his shoulder and down his face. Wilson Deposition at 36-37. More particularly, he stated:

> I was sitting outside on the bench with my hand[s] cuffed, my hands swollen up, my shirt dripping in water because I'd been perspiring. It was all wet with blood. And I was sitting there with my head down and asking them – trying to holler out to get some help so I could go see the doctor because I was in so much pain.

<u>Id.</u> at 64.

At most therefore, Wilson claims to have suffered from cuts on his face and shoulder, the blood from which was easily wiped away by an officer. Additionally, he suffered pain from being handcuffed. None of these injuries however, are sufficient to support a finding that Wilson presented an objectively serious medical need for which Wilson would have been diagnosed by a physician as requiring treatment, or a medical condition so obvious that a lay person would recognize the need for medical treatment. <u>Pourmoghani-Esfahani</u>, 625 F.3d at 1317. <u>See also</u> <u>e.g.</u> <u>Fernandez v. Metro Dade Police Dep't</u>, 397 Fed. Appx. 507, 512-14 (11th Cir. 2010) (limited bleeding, bruising, pain, disorientation, and blood clogs in nose do not constitute serious medical need); <u>Burley v. Upton</u>, 257 Fed. Appx. 207, 210 (11th Cir. 2007) (back pain does not constitute a serious medical need); <u>Price v. Stewart</u>, No. 3:12-cv-49, 2014 WL 1158870, at *7 (M.D. Ga. Mar.

21, 2014) (no serious medical need where plaintiff suffered from a small knot on head along with bruises and abrasions); <u>Mladek v. Day</u>, 293 F. Supp. 2d 1297, 1305-06 (M.D. Ga. 2003) (sore wrists from handcuffs do not constitute serious medical need).

Moreover, when Wilson was examined by medical personnel as part of the intake process at the jail, as well as when he sought follow up medical treatment at the hospital, none of the medical professionals found him to be suffering from a condition requiring treatment.[21]  During the intake process at the jail, Wilson did not report to the nurse that he was suffering from any pain in his shoulders, wrists, neck or back.  Desire Deposition at 22-24.  Nor did he mention that he had any loose teeth as a result of his encounter with the officers.  <u>Id.</u> at 25-26.  As noted earlier, Nurse Desire testified that she would have sent Wilson to the hospital if he was missing a tooth or was bleeding, but he presented with neither condition.  <u>Id.</u> at 26-27.  Additionally, Nurse Desire testified that nothing from her examination of Wilson indicated he needed further examination or treatment, and therefore there was no need to send him to the hospital.  <u>Id.</u> at 14, 33.

Likewise, the doctor and nurse who examined Wilson when he went to the emergency room two days after his encounter with Defendants, did not find him to have suffered from any significant injuries requiring treatment.  Dr. Miu, the emergency room physician, reported that Wilson did not complain of back pain, knee pain, or teeth pain as

---

[21] In this regard, the Court
> may consider the medical evaluation and treatment [Wilson] subsequently received. We recognize that hindsight is, as they say, twenty-twenty. Nonetheless, the purpose of seeking medical treatment is often to discover what has gone wrong with one's body. That determination, admittedly after the fact, can shed light on how wrong something went and when it went wrong. Therefore, judges having to make legal determinations as to whether someone manifested an <u>objectively</u> serious medical need at a certain point in time may properly consider a physician's subsequent evaluation and treatment.

<u>Fernandez</u>, 397 Fed. Appx. at 513 n.7 (collecting cases).

a result of his arrest.  Miu Deposition at 39-40.  Wilson did have mild tenderness in his left shoulder and mild swelling in his left forearm, but otherwise, the range of motion for his shoulder and wrists was normal.  Id. at 25.  Wilson had some superficial abrasions and scrapes on his left shoulder and forehead, where he also had mild swelling.  Id. at 28.  However, X-rays showed that Wilson suffered from arthritis in his forearm and shoulders, but that there was no indication of soft tissue swelling in these areas.  Id. at 32-34.  Finally, the sexual assault nurse examiner noted that Wilson had abrasions on his left temple, Sampson Deposition at 15, his left shoulder and forearm, id. at 16, and bruises and abrasions on his left knee.  Id.  However, despite Wilson's complaints to her that he had pain in his arms, neck, hands, shoulder and head, id. at 11, the nurse did not observe any swollen areas on Wilson.  Id. at 18.

All of these reports reflect that none of the medical professionals who examined Wilson immediately after, and within two days, of his encounter with the Defendants determined that he needed further medical treatment.  Accordingly, the medical evidence and record before the Court establish that Wilson's complaints and injuries arising out of his arrest did not present a serious medical need.  Fernandez, 397 Fed. Appx. at 513; Johnson v. Ft. Pierce Police Dep't, 849 F. Supp. 1543, 1551-52 (S.D. Fla. 1994).

Even if the Court were to find there to be a genuine issue of material fact as to the question of whether Wilson suffered from a serious medical need, the record does not support even an inference that any of Defendants was subjectively aware of a serious medical need.  Pourmoghani-Esfahani, 625 F.3d at 1317.  In this regard, Wilson suggests that because he was forced to wait for two hours with his hands cuffed behind his back prior to receiving any medical treatment, the Defendants were deliberately indifferent to

his medical needs.  Amended Complaint at 7; JSO Internal Investigation Complaint Form at 28; Wilson Deposition at 64.  See also Pourmoghani-Esfahani, 625 F.3d at 1317 (deliberate indifference can arise from excessive delay in providing needed medical treatment).  Wilson's argument fails.

The second element of a deliberate indifference claim is commonly referred to as the "subjective component" of such a claim, and requires a plaintiff to demonstrate that the defendant "subjectively" was aware of a substantial risk of serious harm.  Farmer, 511 U.S. 825, 828, 835-36 (1970). The subjective knowledge component is a difficult standard for a plaintiff to satisfy: establishing mere negligence is not sufficient.  Id.  To satisfy the subjective component, "a [p]laintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1326.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837;  Nam Dang by and through Vina Dang v. Sheriff Seminole Cty. Fla., 871 F.3d 1272, 1280 (11th Cir. 2017) (discussing subjective component in context of serious medical needs).  Notably, collective knowledge will not support a claim of deliberate indifference.  Id.  Rather the knowledge of each defendant must be evaluated based on what that defendant actually knew.  Id.

An officer disregards a serious medical need by more than gross negligence, when the officer knows that an individual is in serious need of medical care and fails or refuses to obtain medical treatment.  Id.  "Thus, 'knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs is essential to a finding of deliberate indifference.'"  Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1191 (11th

Cir. 1994) abrogated in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002) (quoting Horn ex rel. Parks v. Madison Cty. Fiscal Ct., 22 F.3d 653, 660 (6th Cir. 1994)); see also Estate of Bearden v. Anglin, 543 Fed. Appx. 918, 921 (11th Cir. 2013) (quoting same).  Indeed, proof that the defendant "should have perceived the risk but did not is insufficient."  Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999); Kruse v. Williams, 592 Fed. Appx. 848, 856 (11th Cir. 2014) (same).

The Eleventh Circuit has found that summary judgment should be granted for the defendant unless the plaintiff presents some evidence of the official's subjective knowledge, even if only circumstantial.  Campbell, 169 F.3d at 1364; see also McElligot v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (same).  Additionally, in the context of a defendant's motion for summary judgment,

> [a] district court should grant summary judgment when, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case.
>     [A court resolves] all issues of material fact in favor of the plaintiff, and then determine[s] the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts.  If the evidence could not lead a rational fact-finder to find for the nonmoving party, and where the nonmoving party fails to make a sufficient showing to demonstrate an element essential to that party's case, on which that party bears the burden of proof at trial, then no genuine issue of material fact exists, and summary judgment should be granted.  Finally, genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.  For factual issues to be considered genuine, they must have a real basis in the record.

McDowell v. Brown, 392 F.3d 1283, 1288–89 (11th Cir. 2004) (citations and quotations omitted).

Here, the Court first notes that to the extent that Wilson's bleeding constituted a serious medical need, by his own admission, an officer tended to his bleeding by wiping the blood away.  Amended Complaint at 7.  Thus, the evidence shows that to the extent

an officer was aware of Wilson's medical need, he responded to it, undermining any claim of deliberate indifference. Moreover, Wilson has not presented the Court with any evidence to permit an inference that any of the officers possessed subjective knowledge of a serious medical need when they forced Wilson to sit with his hands cuffed behind his back for two hours. At most, the undisputed evidence before the Court indicates that Wilson sat at the police station with his hands cuffed behind his back for two hours, and that Wilson tried to call out for help "so that [he] could go see the doctor because [he] was in so much pain." Wilson Deposition at 13, 64; JSO Internal Investigation Complaint Form at 28. This evidence is insufficient to support even an inference that the officers were actually and subjectively aware that Wilson was in serious need of medical care, and subsequently disregarded that need. Campbell, 169 F.3d at 1372-73 (affirming summary judgment where plaintiff failed to present sufficient evidence of defendants' subjective knowledge to raise a jury question); Hill, 40 F.3d at 1190-21 (noting that knowledge of a serious medical need is essential to a claim of deliberate indifference); see also Daniels v. Jacobs, __ Fed. Appx. __, 2018 WL 4998130, at *8-9 (11th Cir. Oct. 16, 2018) (affirming summary judgment where the record showed at most the defendant "should" have been aware of the serious medical need, but finding that no reasonable jury could conclude the defendants actually had subjective knowledge of the serious medical need); Mitchell v. McKeithen, 672 Fed. Appx. 900, 903 (11th Cir. 2016) (noting that "[n]o liability arises . . . for an official's failure to alleviate a significant risk that [she] should have perceived but did not," and affirming summary judgment where there was no evidence the defendant was actually subjectively aware of the risk).

Finally, the officers' two hour delay in attending to Wilson's medical needs does did not rise to the level of deliberate indifference. In evaluating a claim that a defendant delayed medical treatment to a plaintiff, courts have "consistently considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Goebert, 510 F.3d at 1327. Notably, while a few hours delay "for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference[,] [d]elayed treatment for injuries that are of a lesser degree of immediacy than broken bones and bleeding cuts, but that are obvious serious medical needs, may also give rise to constitutional claims." Harris v. Coweta Cty., 21 F.3d 388, 393–94 (11th Cir. 1994) (internal citations and quotations omitted). However, a plaintiff who complains "that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill, 40 F.3d at 1188. Wilson has not provided the Court with any medical evidence from which the Court could infer that the officers, when they delayed providing Wilson with medical treatment for two hours, disregarded his risk of serious harm by engaging in conduct beyond that of gross negligence. See Pourmoghani-Esfahani, 625 F.3d at 1317. See also Jackson v. Capraun, 534 Fed. Appx. 854, 857 (11th Cir. 2013) (delay during which officer filled out arrest report and helped in arrest of two other individuals prior to providing medical treatment to arrestee did not constitute deliberate indifference); Goree v. City of Atlanta, 276 Fed. Appx. 919, 921-22 (11th Cir. 2008) (delay of an hour and twenty minutes prior to providing medical care was not deliberately indifferent); Andujar v. Rodriguez, 486 F.3d 1199, 1204 (11th Cir. 2007) (two hour delay prior to giving arrestee stiches was lawful delay); Kane v. Hargis, 987

F.2d 1005, 1008-09 (4th Cir. 1993) (four hour delay before treatment did not rise to the level of deliberate indifference). Accordingly, even if Wilson did suffer from a serious medical need, there is no evidence before the Court supporting an inference that the defendant officers were subjectively aware that Wilson suffered from a substantial risk of serious harm, or that they disregarded the risk of that harm by making him wait for two hours with his hands cuffed behind his back prior to his examination by the intake nurse at the jail.

Even if the Court were to conclude otherwise, Wilson has not presented the Court with any Supreme Court or Eleventh Circuit case law establishing that Defendants had adequate notice that their actions were unlawful and therefore violated Wilson's clearly established constitutional rights. See Hope, 536 U.S. at 739; Kingsland, 382 F.3d at 1232. To the contrary, and as discussed above, the circumstances of Wilson's encounter with Defendants and his subsequent treatment at the jail, fits easily within Eleventh Circuit precedent holding that an officer's actions were constitutional. See e.g., Fernandez, 397 Fed. Appx. at 512-14 (no serious medical need where defendant presented with limited bleeding, bruising, pain, disorientation, and blood clogs in nose); Burley, 257 Fed. Appx. at 210 (back pain does not rise to level of serious medical need). See also Youmans v. T.A. Gagnon, 626 F.3d 557, 564 (11th Cir. 2010) (not clearly established that four hour delay in providing medical treatment constituted deliberate indifference without determining whether delay was a constitutional violation); Goree, 276 Fed. Appx. at 921-22 (hour and twenty minutes delay in providing medical care was not deliberately indifferent); Andujar, 486 F.3d at 1204 (no deliberate indifference where there was a two hour delay prior to giving arrestee stiches). Nor has Wilson pointed to a "broader, clearly

established principle [that] applies with 'obvious clarity' to the particular factual situation faced by [Defendants], or that the conduct at issue so obviously violated the Constitution that existing case law is unnecessary." <u>Taylor</u>, 649 Fed. Appx. at 747.

As such, Defendants are entitled to qualified immunity on Wilson's claim of deliberate indifference to his serious medical needs. Therefore, summary judgment is due to be granted in favor of Defendants on Count IX of Wilson's Amended Complaint, to the extent it raises a deliberate indifference claim.

### iii. <u>Miranda</u> Warning Violation Claim

Defendants also move for summary judgment on Wilson's claim against the officers for failing to provide him with sufficient <u>Miranda</u>[22] warnings. <u>See</u> Motion for Partial Summary Judgment at 23. Wilson's <u>Miranda</u> claims are set forth in Counts IV and V of his Amended Complaint. He alleges that Detective Medlock "did not read the plaintiff his memorandum rights . . . civil rights," Amended Complaint at 6, and further references "Miranda Rights" and the Fifth Amendment. <u>Id.</u> Defendants assert that Wilson's "claim that the Defendant Officers did not follow <u>Miranda</u> and properly read Plaintiff his Fifth Amendment rights does" not "give rise to a viable claim for a civil rights violation" and thus summary judgment in their favor is warranted. Motion for Partial Summary Judgment at 23.

The Supreme Court's decision in <u>Chavez v. Martinez</u>, 538 U.S. 760 (2003), precludes Wilson's claim. In <u>Chavez</u>, the Supreme Court ruled that an officer's failure to provide an arrestee with <u>Miranda</u> warnings does not violate the U.S. Constitution and cannot be grounds for a federal civil rights action. <u>Id.</u> at 772. Moreover, "the absence of

---

[22] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

a 'criminal case' in which [an arrestee] was compelled to be a 'witness' against himself defeats" any form of a Fifth Amendment claim.  Id. at 772-73.  See also Jones v. Cannon, 174 F.3d 1271, 1291 (11th Cir. 1999).

Accepting Wilson's contention that the Defendants did not provide him with Miranda warnings upon his arrest, his claim nevertheless fails.  Wilson was never compelled to testify against himself.  Rather, he entered a plea of nolo contendere to the charge of use, or possession with an intent to use drug paraphernalia.  Wilson Certified Judgment and Sentence at 2.  As such, Wilson's claim against the Defendants for failure to provide him with Miranda warnings fails as a matter of law.  Accordingly, summary judgment is due to be entered in favor of Defendants on Wilson's Miranda claim in Counts IV and V of the Amended Complaint.

### c.  State law tort claims

To the extent that Wilson's claims against Defendants arise under state law, Defendants seek dismissal of all such claims on the grounds of statutory immunity.  Motion to Dismiss Plaintiff's Amended Complaint at 9, 12.  Defendants assert that Wilson's Amended Complaint fails to allege sufficient facts or associated state law under which Defendants may be liable.  Id. at 9.  They also argue that regardless of any state law claims Wilson may have brought against them, they are entitled to immunity under Florida Statute section 768.28(9)(a).  Id. at 12.

Throughout Wilson's pleadings, although not specifically within his Amended Complaint, Wilson uses language which suggests that in addition to his federal claims against Defendants, he is also seeking to hold them liable under Florida law.  See e.g., Response to Motion to Dismiss at 2 (referencing claims against defendants "under federal

and state law"); id. at 5 (citing Florida case law and statutes); Response to Motion for Partial Summary Judgment at 3 (referencing claims against defendants "under federal and state law"). Moreover, taking the facts alleged in Wilson's Amended Complaint as true, and drawing all inferences in his favor, Ashcroft, 556 U.S. at 678; Omar, 334 F.3d at 1247, one could construe several of Wilson's claims against Defendants as presenting state law tort claims. For example, his excessive force and deliberate indifference claims could present assault, battery or negligence claims. See e.g., Johnson v. Dixon, No. 3:14-cv-cv-579-J-39PBD, 2015 WL 12851563, at *22-23 (M.D. Fla. Nov. 20, 2015) (recognizing prisoner's battery claims against prison officials); Graddy v. City of Tampa, No. 8:12-cv-1882-T-24 EAJ, 2014 WL 272777, at *12 (M.D. Fla. Jan. 23, 2014) (state based claim against officers for failing to provide appropriate care to prisoners framed as negligence action); FLA. STAT. ANN. at § 784.011 (defining assault); id. at § 784.021 (defining aggravated assault); id. at § 784.03 (defining battery; felony battery); id. at § 784.045 (defining aggravated battery).[23]

However, even if the Court were to construe Wilson's Amended Complaint as presenting state law claims, Florida law provides immunity to state employees

> for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his or her employment of function, unless such officer[s] . . . acted in bad faith or with malicious purpose or in any manner exhibiting wanton and willful disregard of human rights, safety, or property.

---

[23] Wilson also argues that Defendants stole his wallet, see e.g., Response to Motion to Dismiss at 7; Response to Motion for Partial Summary Judgment at 6. However, Wilson's Amended Complaint does not suggest in any manner that the Defendants stole his wallet. Rather, he only references this potential claim in his responses to Defendants' Motions. See Response to Motion to Dismiss at 7; Response to Motion for Partial Summary Judgment at 6. While the Court must liberally construe Wilson's pro se Amended Complaint, Tannenbaum, 148 F.3d at 1263, it will not rewrite his pleadings nor permit him to add new claims through his subsequent filings before this Court. See generally Gilmour, 382 F.3d at 1315 (plaintiff cannot raise new claim in subsequent pleadings); GJR Invs., Inc., 132 F.3d at 1369 (court will not rewrite pleadings for pro se plaintiff). As such, the Court does not consider this claim.

FLA. STAT. ANN. § 768.28(9)(a).  Accordingly,

> in order for a plaintiff to succeed in piercing the statutory immunity defense, he must make a good faith allegation in the complaint that the public office official either acted outside the scope of his employment or in bad faith.  The statute places an affirmative duty on the plaintiff to satisfy this pleading requirement.  This duty cannot be satisfied by mere conclusory allegations.  Without support, the complaint must fail.

Brown v. McKinnon, 964 So.2d 173, 175 (Fla. 3d DCA 2007) (internal citations omitted).

Courts construing the bad faith prong of section 768.28 use the actual malice standard, Parker v. State Bd. of Regents ex rel. Fla. State Univ., 724 So.2d 163, 167 (Fla. 1st DCA 1998), which means the conduct must be committed with "ill will, hatred, spite, [or] an evil intent."  Reed v. State, 837 So.2d 366, 368–69 (Fla. 2002).  Conduct meeting the wanton and willful standard is defined as "worse than gross negligence," Sierra v. Associated Marine Insts., Inc., 850 So.2d 582, 593 (Fla. 2d DCA 2003), and "more reprehensible and unacceptable than mere intentional conduct."  Richardson v. City of Pompano Beach, 511 So.2d 1121, 1123 (Fla. 4th DCA 1987).  See also Kastritis v. City of Daytona Beach Shores, 835 F.Supp.2d 1200, 1225 (M.D. Fla. 2011) (defining these standards).  Additionally, courts are reluctant to strip officers of their immunity under section 768.28(9)(a) of the Florida Statutes.  As such, a threadbare recital that a defendant "acted maliciously and in bad faith is conclusory" and insufficient.  Brivik v. Law, 545 Fed. Appx. 804, 807 (11th Cir. 2013).

In this regard, Wilson's Amended Complaint is devoid of any allegations that Defendants acted with "ill will, hatred, spite, [or] an evil intent," Reed, 837 So.2d at 368–69, or any facts suggesting that Defendants "acted maliciously and in bad faith."  Brivik, 545 Fed. Appx. at 807.  Accordingly, to the extent that Wilson's claims of excessive force

or deliberate indifference could support claims under state law, they are due to be dismissed.

## V.     Conclusion

In summary, what remains before the Court from Wilson's eleven count Amended Complaint are Counts III, IV, VII, VIII, and X, to the extent that these counts assert federal § 1983 claims based on events which occurred after Wilson lost consciousness in the course of being arrested by the Defendants.  Likewise, Count XI, which addresses Wilson's claim that the Defendants illegally searched his car, remains pending.  Although many of Defendants' arguments in their Motion to Dismiss and their Motion for Partial Summary Judgment overlapped with one another, the Court grants in full the Defendants' Motion for Partial Summary Judgment.  Accordingly, those arguments in Defendants' Motion to Dismiss which duplicate the arguments raised in the Motion for Partial Summary Judgment are denied as moot.  In respect to Defendants' argument in the Motion to Dismiss regarding any state law claims Wilson may have raised, the Motion to Dismiss is granted.  Otherwise, all other remaining arguments in the Motion to Dismiss are denied, including Defendants' argument that Wilson's Amended Complaint be dismissed as a shotgun complaint.

Therefore, in light of the foregoing, it is **ORDERED:**

1) Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 34), is **GRANTED** in part and **DENIED** in part.

   a.  The Motion to Dismiss is **granted in part** to the extent that any state law claims raised are **dismissed**.

   b.  The Motion to Dismiss is **denied as moot** as to any arguments raised

in Defendants' Motion for Partial Summary Judgment.

    c. The Motion to Dismiss is **denied** as to any remaining arguments.

2) Defendants' Motion for Partial Summary Judgment (Doc. 42) is **GRANTED**.

    a. Judgment is due to be entered in favor of Defendants as to the claims in Counts I, II, V, VI and IX, in their entirety.

    b. Partial Judgment is due to be entered in favor of Defendants as to the portion of the claims in Counts III, IV, VIII, and X based on any force used by Defendants up to the point Wilson lost consciousness.

3) The Court will defer entry of Judgment until the conclusion of the case.

**DONE AND ORDERED** in Jacksonville, Florida this 15th day of February, 2019.

MARCIA MORALES HOWARD
United States District Judge

lc26

Copies to:

Counsel of Record
Pro Se Parties